1  THOMAS P. O'BRIEN
   United States Attorney
2  ROBB C. ADKINS
   Assistant United States Attorney
3  Chief, Southern Division
   KENNETH B. JULIAN (Cal. State Bar #149840)
4  Deputy Chief, Assistant United States Attorney
   BRETT A. SAGEL (Cal. State Bar #243918)
5  Assistant United States Attorney
        411 W. Fourth Street, Suite 8000
6       Santa Ana, California 92701
        Telephone:  (714) 338-3537
7       Facsimile:  (714) 338-3708
        Email: kenneth.julian@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                  UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                        SOUTHERN DIVISION

13
   UNITED STATES OF AMERICA,    ) No. CR 06-224(D)-AG
14                              )
              Plaintiff,        ) GOVERNMENT'S OPPOSITION TO
15                              ) DEFENDANT MICHAEL CARONA'S MOTION
              v.                ) FOR BAIL PENDING APPEAL
16                              )
   MICHAEL S. CARONA,           ) DATE: APRIL 27, 2009
17                              ) TIME: 1:30 P.M.
                                ) PLACE: COURTROOM 10D
18            Defendant.        )
                                )
19  _____ )

20

21

22

23

24

25

26

27

28

**I.**

**INTRODUCTION AND ARGUMENT**

On April 15, 2009, the government filed a Bench Brief opposing Bail Pending Appeal (the "Bench Brief" or "BB") in anticipation that defendant MICHAEL S. CARONA ("defendant") would make such a request.  On April 17, 2009, defendant filed a Motion for Release Pending Appeal (the "Motion" or "Mtn.").  In the Motion, defendant asserts that three legal questions exist for appeal, which defendant argues are fairly doubtful under the Ninth Circuit's standard, and which are likely to result in a reversal of defendant's conviction for witness tampering.  Mtn. at 2-8.  These questions involve:

    (1)  This Court's failure to suppress the August 13th Recording and related rulings;

    (2)  The proper legal elements of witness tampering under 18 U.S.C. § 1512(b)(2)(A); and

    (3)  This Court's denial of defendant's motion to dismiss for alleged grand jury errors.

As set forth in the government's Bench Brief, these legal questions are not fairly doubtful and will not likely result in reversal of defendant's conviction.  BB at 4-8; United States v. Montoya, 908 F.2d 450 (9th Cir. 1990).  Without repeating the arguments in the Bench Brief, the government briefly responds to each of these contentions, as follows:

1

### A.   Failure to Suppress the August 13th Recording

In the Motion, defendant contends that *he* was entitled to a "remedy" for the Court's finding that prosecutors stepped over the line drawn in Rule 2-100 of the California Rules of Professional Conduct ("Rule 2-100").  This is simply incorrect. Rule 2-100 is "a rule governing attorney conduct and the duties of attorneys, and does not create a right in a party not to be contacted by opposing counsel." United States v. Talao, 222 F.3d 1133, 1138 (9th Cir. 2000) (emphasis added); United States v. Lopez, 4 F.3d 1455, 1462 (9th Cir. 1993) ("rule against communicating with represented parties is fundamentally concerned with the duties of attorneys, not with the rights of parties.") (emphasis added).

Here, because defendant's constitutional rights were not violated, and because defendant had no rights that could be violated under Rule 2-100, defendant was not personally entitled to any remedy for the violation of Rule 2-100.  Talao, 222 F.3d at 1138.  Thus, if the Court were to deem a remedy appropriate, it must be aimed at preserving respect for the Rules of Professional Conduct and to deter future violations, not personally rewarding defendant.  Lopez, 4 F.3d at 1463.  There is no doubt that this Court acted well within its discretion when it elected not to suppress the August 13th Recording.  Id.  As the Court noted, such a remedy was too extreme for this context. Moreover, no criminal case supports suppression for a Rule 2-100 violation without a corresponding violation of defendant's

2

constitutional rights under the Sixth Amendment.[1]  Suppression
Denial order ("SDO") at 12.

Suppression also was not justified because the Rule 2-100
violation in this case was neither deliberate nor flagrant.
Lopez, 4 F.3d at 1463.  As the Court recognized, the law in this
area was murky and difficult to apply in these circumstances.
SDO at 12-13.  Moreover, it is undisputed that prosecutors here
consulted in advance with and relied upon ethics advisors'
opinions and sought and obtained pre-approval from appropriate
supervisors.  Without a deliberate or flagrant violation, there
can be no suppression of the August 13th Recording under the
Court's supervisory powers.  Lopez, 4 F.3d at 1463.  Hence, as
the Court ruled, suppression was "particularly unwarranted" under
the circumstances of this case.  SDO at 12.

Furthermore, the prospect of a bar state investigation, like
the one that ensued against the prosecutors here, itself will
deter other prosecutors from using the subpoena ruse.  Lopez, 4
F.3d at 1463.  This is true regardless of the outcome of that
investigation.  Moreover, this Court's Suppression Denial Order
serves to clarify the law in this context and will serve as a
guide to prosecutors in the future.  Nothing more was required to
preserve respect for the Rules of Professional Conduct and to
deter future violations.  Id.; Talao, 222 F.3d at 1138.  See also

---

[1]  It is noteworthy that that cases defendant relies upon
consist of a civil case, Midwest Motor Sports v. Arctic Cat
Sales, Inc., 347 F. 3d 693 (8th Cir. 2003), and a case involving
a Sixth Amendment violation, United States v. Bowman, 277 F.
Supp. 2d 1239, 1243 (N.D. Ala. 2003).

3

1   SDO at 13 ("The State Bar of California has a very effective
2   system for disciplining and deterring attorney misconduct ....").

3        Additionally, the Court permitted defendant to offer his own
4   statements from the tape, for himself, at trial--thereby allowing
5   defendant to avoid testifying subject to cross-examination--under
6   the residual hearsay exception of Rule 807 ("Rule 807") of the
7   Federal Rules of Evidence.  This ruling provided a substantial
8   benefit to defendant for the Rule 2-100 violation.  In making
9   this ruling, the Court considered the Rule 2-100 violation in
10  assessing whether the "interest of justice w[as] best ... served
11  by admission of the statement[s] into evidence."  Fed. R. Evid.
12  807.  Thus, even if defendant was entitled to a "remedy" for such
13  the violation (which he is not), he did receive one.

14       Finally, no fairly debatable question exists as to whether
15  the Court properly denied defendant's attempt to present evidence
16  and argument to the jury with respect to the Rule 2-100
17  violation.  It would have been plainly improper for this Court to
18  admit evidence or argument that prosecutors violated Rule 2-100.
19  See, e.g., Arizona v. Washington, 434 U.S. 497, 515-16 (1978)
20  (defense attorney's comments in opening statement that the
21  prosecution improperly withheld evidence from the defendant was
22  so manifestly prejudicial that it warranted a mistrial in favor
23  of the government).

24
25
26
27
28

                                    4

**B.** **Composition of the Legal Elements of Witness Tampering**

In the Motion, defendant claims that a fairly doubtful question exists as to the meaning of "withhold" in connection with 18 U.S.C. § 1512(b)(2)(A). This claim lacks merit. As the Court already has ruled, there is nothing ambiguous about the term withhold, or its application to the facts of this case. See Order Denying Arrest of Judgement at 8 (defendant's legal arguments are without merit because they too "finely pars[e] language" of Section 1512(b)(2)(a)). Additionally, because defendant did not object to the applicable jury instructions, defendant's legal arguments on appeal about Section 1512(b)(2)(A) are likely foreclosed under Fed. R. Crim. P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires").

Citing no cases to support it, defendant argues that when one criminal statute partially overlaps with another, such as Section 1512(b)(1) (influence testimony) and Section 1512(b)(2)(a) (withhold testimony), then it renders one of the provisions superfluous. Mtn at 7:13-15. This is clearly wrong. Compare, e.g., 18 U.S.C. § 1512(b)(2)(D) (corrupt persuasion to cause a person to be absent from an official proceeding") (emphasis added); 18 U.S.C. § 1512(b)(1) (corrupt persuasion to "prevent the testimony of any person") (emphasis added); 18 U.S.C. § 1512(b)(2)(C) (corrupt persuasion to "evade legal process summoning that person to appear as a witness") (emphasis added).

5

1    For example, a defendant who used corrupt persuasion to
2  cause a witness to be out of town with intent to keep the witness
3  from being served with a grand jury subpoena and ultimately to
4  prevent the witness's grand jury testimony could be charged with
5  using corrupt persuasion: (1) to cause a witness to "be absent"
6  in violation of 18 U.S.C. § 1512(b)(2)(D); (2) to prevent the
7  testimony of a witness in violation of 18 U.S.C. § 1512(b)(1);
8  and/or (3) to cause a witness to "evade process" in violation of
9  18 U.S.C. § 1512(b)(2)(C).  In the context of the criminal laws,
10  such overlap is commonplace and does not render a statute
11  "superfluous."  Id.

12    Defendant's reliance upon United States v. Corley, -- S.Ct.
13  --, 2009 WL 901513 (U.S.) (2009), is misplaced.  In Corley, one
14  reading of a federal statute was in total conflict with another
15  section of that same statute and Rule 5(a) of the Federal Rules
16  of Criminal Procedure ("Rule 5(a)").  Id.  In Corley, the United
17  States Supreme Court simply ruled that the federal statute must
18  be read so as to give effect to all of its provision and Rule
19  5(a).  The situation in this case is completely different.

20    Section 1512(b)(1) (influence testimony) and Section
21  1512(b)(2)(a) (withhold testimony) are not in conflict at all.
22  Rather, these sections merely overlap, in part, such as where, as
23  in the present case, a defendant corruptly persuades a witness
24  with intent to cause the witness to lie to and withhold testimony
25  from a grand jury.  Nothing about these statutes renders the
26  other "inoperative or superfluous, void or insignificant" as
27  discussed in Corley.  Corley, 2009 WL 901513 at 8.  Nor does
28  the Supreme Court's decision in Corley bar Congress from enacting

6

1  criminal statutes with potentially overlapping and similar

2  applications, but with separate elements.  Id.; compare also 18

3  U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1347 (healthcare

4  fraud), and 1348 (securities fraud).

5          **C.  Motion to Dismiss for Grand Jury Errors**.

6          Defendant argues that a fairly debatable question exists as

7  to whether this Court should have dismissed the indictment for

8  alleged grand jury errors.  Mtn. at 8.  As discussed in the

9  government's Bench Brief, defendant did not come close to meeting

10 his pre-trial burden in this regard.  See BB at 7-8.  More

11 importantly, however, the Motion completely ignores the fact that

12 defendant's burden, after conviction, is almost insurmountable.

13         Stated another way, post-conviction complaints about alleged

14 errors in the grand jury are not likely to lead to a reversal of

15 a conviction.  See, e.g., Williams v. Stewart, 441 F.3d 1030,

16 1041-42 (9th Cir.) (observing that any constitutional error from

17 prosecutor's alleged misconduct during grand jury proceeding

18 harmless because defendant was ultimately convicted on charged

19 offenses).  Even where an error "had the theoretical potential to

20 affect the grand jury's determination whether to indict ...

21 defendants for the offenses with which they were charged," the

22 defendant's later conviction by a petit jury renders the error

23 harmless, as a matter of law.  United States v. Mechanik, 475

24 U.S. 66, 70 (1986).

25

26

27

28

7

1    This is because "the societal costs of retrial after a jury

2    verdict of guilty are far too substantial to justify setting

3    aside the verdict simply because of an error in the earlier grand

4    jury proceedings." Id.  In this regard, the Mechanik Court

5    stated:

6              These societal costs of reversal and retrial are
               an acceptable and often necessary consequence when
7              an error in the first proceeding has deprived a
               defendant of a fair determination of the issue of
8              guilt or innocence.  But the balance of interest
               tips decidedly the other way when an error has had
9              no effect on the outcome of the trial.

10   Id. (emphasis added).

11   In United States v. Atwood, 489 F.Supp.2d 982 (D. Ariz.

12   2007), after conviction at trial, a defendant claimed "that

13   during grand jury proceedings the prosecutor failed to present

14   exculpatory evidence and also presented false testimony." Id. at

15   1034.  Like defendant here, the defendant in Atwood claimed that

16   "grand jurors were not told of inaccuracies in witnesses'

17   statements, [and] discrepancies" among witness statements. Id.

18   Applying Mechanik, the district court rejected these claims:

19   "[b]ecause the jury ultimately convicted [defendant] of both

20   charged offenses, 'any error in the grand jury proceeding

21   connected with the charging decision was harmless beyond a

22   reasonable doubt.'" Id. quoting Mechanik, 475 U.S. at 70.

23   In this case, none of the claimed grand jury errors had any

24   "effect on the outcome of the trial," at which defendant was

25   convicted.  Mechanik, 475 U.S. at 70.  On appeal, any claimed

26   grand jury errors therefore will be deemed harmless. Williams,

27   441 F.3d at 1041-42.  Hence, as to alleged grand jury errors,

28   defendant cannot show a fairly doubtful question for appeal that

8

is likely to result in reversal of defendant's conviction.  Id.;
Atwood, 489 F. Supp. 2d at 1034.

## II.

## CONCLUSION

The arguments presented are insufficient to warrant
defendant's release pending appeal.  As such, this Court should
deny defendant's Motion for bail pending appeal. 18 U.S.C. §
3143(b); United States v. Reynolds, 956 F.2d 192, 193 (9th Cir.
1992) (district court properly denied bail pending appeal after
sentencing defendant convicted of witness tampering under Section
1512(b) to 14 years imprisonment because defendant failed to
raise a substantial question for appeal).


DATED: April 23, 2009          Respectfully submitted,

                               THOMAS P. O'BRIEN
                               United States Attorney

                               ROBB C. ADKINS
                               Assistant United States Attorney
                               Chief, Southern Division

                               *Kenneth B. Julian*

                               KENNETH B. JULIAN
                               BRETT A. SAGEL
                               Assistant United States Attorney
                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

9