UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 02 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff - Appellee,<br><br>v.<br><br>MICHAEL S. CARONA,<br><br>         Defendant - Appellant. | No. 09-50235<br><br>D.C. No. 8:06-cr-00224-AG-2<br>U.S. District Court for Central<br>California, Santa Ana<br><br>**MANDATE** |

*Received (DCM)*

RECEIVED
CLERK, U.S. DISTRICT COURT

NOV - 2 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

The judgment of this Court, entered January 06, 2011, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

                              FOR THE COURT:
                              Molly C. Dwyer
                              Clerk of Court

                              Theresa Benitez
                              Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MICHAEL S. CARONA,
*Defendant-Appellant.*

No. 09-50235

D.C. No.
8:06-cr-00224-AG-2

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
May 5, 2010—Pasadena, California

Filed January 6, 2011

Before: John T. Noonan, Richard R. Clifton and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Clifton

415

## COUNSEL

Christina Coates, Courtney Chavez, John D. Cline (argued), C. Kevin Marshall, and Brian A. Sun, Jones Day, San Francisco, California, for the appellant.

George S. Cardona, Christine C. Ewell, Brett A. Sagel (argued), Santa Ana, California, for the appellee.

## OPINION

CLIFTON, Circuit Judge:

Appellant Michael S. Carona, formerly the Sheriff of Orange Country, California, was charged with several federal crimes relating to alleged corruption. The jury acquitted him on most counts but found him guilty on one count of witness tampering in violation of 18 U.S.C. § 1512(b)(2)(A). He appeals that conviction on two primary grounds.

The first concerns the admission into evidence of a recorded conversation between Carona and a confederate who was at the time of the conversation cooperating with federal prosecutors. The district court held that the prosecutors violated Rule 2-100 of the California Rules of Professional Conduct ("Communication with a Represented Party") by communicating with Carona, known by them at the time to be represented by counsel, through the cooperating witness, to

whom the prosecutors had given fake documents to use in eliciting incriminating statements. The district court did not suppress the evidence or impose sanctions on the government for this violation, however, leaving any discipline for the violation to the state bar. Carona contends, among other things, that the evidence should have been suppressed and that the lead prosecutor should have been disqualified. We conclude, however, that the actions of the prosecutors did not violate Rule 2-100 and, further, that the district court properly denied suppression of the evidence even if there had been a violation of Rule 2-100.

Second, Carona moved for a judgment of acquittal, or in the alternative for a new trial, on the one count of witness tampering in violation of 18 U.S.C. § 1512(b)(2)(A) for which he was convicted, arguing that the prohibition under that statute against "corruptly persuad[ing]" a witness to "withhold testimony" from the grand jury properly applied only where a defendant intended for a witness to withhold all testimony, and not where, as in this case, the evidence indicated that the defendant intended for a witness to omit information by testifying falsely in the course of providing testimony. Carona argued that his acts were covered only by a related but separate subsection of the statute, 18 U.S.C. § 1512(b)(1). The jury acquitted Carona of the count which alleged violation of that subsection. The district court denied the motion. Carona appeals that denial and the instructions given by the court to the jury regarding that count. We are not persuaded by this challenge, either, concluding that the identified statute, 18 U.S.C. § 1512(b)(2)(A), covers the misconduct for which the jury found Carona guilty.

We affirm the judgment of the district court.

## I.  Background

Carona served as Sheriff of Orange County, an elected position, from January 1999 until early 2008, when he

resigned following his indictment. During his initial campaign for sheriff in 1998, Carona received financial support from Donald Haidl. Haidl testified at trial that Carona "offered [him] the complete power of the sheriff's department for raising money and supporting him."

After Carona took office, Haidl testified that he continued to make payments to Carona. He became concerned that Carona was jeopardizing his position and Haidl's arrangement by accepting small amounts from other people. Haidl testified that he offered Carona and Assistant Sheriff George Jamarillo each a "bribe not to take bribes" in the amount of $1000 per month, which they accepted. Haidl also testified that he gave Carona a speedboat in 2001, which they concealed through a sham transaction.

In 2004, the federal government began an investigation. In early 2007, Haidl admitted his own criminal misconduct and signed a cooperation plea agreement with the government. Following this plea agreement, government attorneys instructed Haidl to meet with Carona and to make surreptitious recordings of their meetings. At this time, Carona was represented by attorney Dean Stewart, who had notified the government that he was representing Carona.

Haidl met with Carona on July 7, 2007, and July 15, 2007, but these meetings did not provide enough evidence to satisfy the prosecutors. In preparation for a subsequent meeting, the government equipped Haidl with two fake "subpoena attachments" that identified certain records that Haidl was to tell Carona he had been subpoenaed to produce. These documents referred to cash payments Haidl provided to Carona and to the sham transaction they used to conceal the gift of the speedboat. Haidl and Carona met again on August 13, 2007, and in their conversation, Carona made statements that suggested both that he had received payments and gifts from Haidl and that he wanted Haidl to lie to the grand jury about these transactions.

Carona was subsequently charged with tampering with a grand jury witness in two separate counts of the indictment, one count alleging a violation of 18 U.S.C. § 1512(b)(1), and the other a violation of § 1512(b)(2)(A). These statutes will be discussed in more detail below. Carona was also charged with conspiracy to commit honest services mail fraud in violation of 18 U.S.C. § 371, and with three counts of mail fraud depriving the public of the right of honest services of a public official in violation of 18 U.S.C. §§ 1341 and 1346.

Carona moved before trial to suppress his statements to Haidl because they allegedly were obtained in violation of Rule 2-100 of the California Rules of Professional Conduct. Rule 2-100 prohibits an attorney from "communicat[ing] directly or indirectly . . . with a party [the attorney] knows to be represented by another lawyer." Cal. R. Prof. Conduct 2-100(A). The state rules apply to federal prosecutors under 28 U.S.C. § 530B.[1]

The district court held that the prosecutors had violated Rule 2-100, but the court declined to suppress the evidence, concluding that "there are less extreme remedies than suppression" and "[t]he State Bar for California has a very effective system for disciplining and deterring attorney misconduct." Carona then moved for a jury instruction permitting the jury to accord less weight to his recorded statements because they were obtained in violation of an ethical rule. The court denied this request. The court also denied Carona's requests to disqualify the lead prosecutor and to introduce evidence of the lead prosecutor's ethical violation.

---

[1] That statute, sometimes referred to as the McDade Amendment, provides that "[a]n attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a); *see also United States v. Talao*, 222 F.3d 1133, 1139-40 (9th Cir. 2000) (providing historical background on ethical rules for government attorneys).

The jury acquitted Carona on the four counts of conspiracy and honest services mail fraud and on one count of witness tampering. The jury found Carona guilty, however, on the count which alleged witness tampering in violation of 18 U.S.C. § 1512(b)(2)(A), which covers "whoever knowingly uses intimidation, threatens, or corruptly persuades" a witness to "withhold testimony" during an official proceeding. Carona moved for an arrest of judgment and a judgment of acquittal, arguing that his conduct did not violate the cited code section because § 1512(b)(2)(A) applied to a defendant who intended a witness to withhold all testimony and did not cover a defendant who intended a witness to give false testimony. The district court denied the motion.

Carona appealed.

## II.  Discussion

We review de novo a district court's conclusion that an attorney's conduct violated court rules. *United States v. Lopez*, 4 F.3d 1455, 1458 (9th Cir. 1993). A district court's exercise of its supervisory powers is reviewed under the abuse-of-discretion standard. *Id.* at 1463.

"We review challenges to the sufficiency of the evidence by determining whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Reyes-Bosque*, 596 F.3d 1017, 1035 (9th Cir. 2010) (emphasis in original) (internal quotation marks omitted). Jury instructions to which the defendant did not object are reviewed for plain error. *United States v. Miranda-Lopez*, 532 F.3d 1034, 1040 (9th Cir. 2008).

### A.   Rule 2-100

Relying on *United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000), and *United States v. Hammad*, 858 F.2d 834 (2d Cir.

1988), the district court held that the prosecutors violated the "no-contact rule" set forth in Rule 2-100 of the California Rules of Professional Conduct. Carona sought four remedies for this alleged violation, all of which were rejected by the district court: (1) suppression of the tapes of the August 13 meeting between Carona and Haidl, (2) instruction to the jury that it may give less weight to the evidence, (3) introduction of evidence of the lead prosecutor's ethical misconduct, or (4) disqualification of the lead prosecutor.

We disagree with the conclusion that the prosecutors violated Rule 2-100. Additionally we hold that even if there had been a violation, the district court did not abuse its discretion in rejecting these remedies and instead deferring to the state bar to address any ethical violation.

[1] To determine whether "pre-indictment, non-custodial communications by federal prosecutors and investigators with represented parties" violated Rule 2-100, we have adopted a "case-by-case adjudication" approach rather than a bright line rule. *Talao,* 222 F.3d at 1138-39. We have recognized the possibility that such conversations could violate the rule and "declined to announce a categorical rule excusing all such communications from ethical inquiry." *Id.* Nonetheless, our cases have more often than not held that specific instances of contact between undercover agents or cooperating witnesses and represented suspects did not violate Rule 2-100. *See, e.g., United States v. Powe,* 9 F.3d 68, 69 (9th Cir. 1993) (per curiam) (finding no violation of Rule 2-100 where a codefendant "agreed to become a cooperating witness for the prosecution," "met with [the represented defendant] before [he] was charged or arrested," and "secretly recorded that conversation"); *United States v. Kenny,* 645 F.2d 1323, 1337-38 (9th Cir. 1981) (holding there was no ethical violation where a codefendant "agreed to cooperate with the Government" and "recorded a telephone conversation with [the represented defendant]").

The only relevant factual difference between *Kenny* and *Powe* and the current case is that here the prosecutors provided the informant with fake subpoena attachments to use in getting Carona to incriminate himself. In *Hammad*, the Second Circuit held that issuing a false subpoena to an informant to "create a pretense that might help the informant elicit admissions . . . . contributed to the informant's becoming that alter ego of the prosecutor." 858 F.2d at 840. Relying on *Hammad*, the district court held that the use of the fake subpoena attachments made Haidl the alter ego of the prosecutor, causing Haidl's communication with Carona to violate Rule 2-100.

[2] While in *Talao* we held *Hammad*'s "case-by-case" approach to be the proper one, 222 F.3d at 1139, *Talao* did not involve the use of a fake subpoena or any other falsified documents, and we did not adopt *Hammad*'s holding on that subject. Rather, *Talao* dealt with communications between a prosecutor and an employee who claimed that his employer's attorney, who purported to represent the employee as well, was trying to intimidate him into giving false testimony. We held that the prosecutor did not violate Rule 2-100 by speaking with the employee, because "[i]t would be an anomaly to allow the subornation of perjury to be cloaked by an ethical rule, particularly one manifestly concerned with the administration of justice." *Id.* at 1140.

We have not previously needed to consider the question of whether providing fake court papers to an informant to use during a conversation with a represented party is conduct that violates Rule 2-100. Under the facts presented here, we conclude that it does not.

[3] The use of a false subpoena attachment did not cause the cooperating witness, Haidl, to be any more an alter ego of the prosecutor than he already was by agreeing to work with the prosecutor. Haidl was acting at the direction of the prosecutor in his interactions with Carona, yet no precedent from

our court or from any other circuit, with the exception of
*Hammad*, has held such indirect contacts to violate Rule 2-
100 or similar rules. *See Powe*, 9 F.3d at 69; *Kenny*, 645 F.2d
at 1339; *United States v. Ryans*, 903 F.2d 731, 739 (10th Cir.
1990) (disagreeing with *Hammad* and "agree[ing] with the
majority of courts which have considered the question that
[the no-contact rule] was not intended to preclude undercover
investigations of unindicted suspects merely because they
have retained counsel") (collecting cases).

[4] The false documents were props used by government
to bolster the ability of the cooperating witness to elicit
incriminating statements from a suspect. The district court
appears to have been concerned that by allowing such conduct
a suspect could be "'tricked' into giving his case away by
opposing counsel's artful questions," but it has long been
established that the government may use deception in its
investigations in order to induce suspects into making incrimi-
nating statements. *See, e.g., Sorrells v. United States*, 287
U.S. 435, 441 (1932) ("Artifice and stratagem may be
employed to catch those engaged in criminal enterprises.").
The use of fake documents here was just such a stratagem.
The reasoning of the Third Circuit in *United States v. Mar-
tino*, 825 F.2d 754 (3d Cir. 1987), rejecting a claim of a pro-
secutorial ethical violation based on a fake subpoena, seems
to us particularly persuasive:

> If government officials may pose as non-existent
> sheiks in an elaborately concocted scheme, supply a
> necessary ingredient for a drug operation, and utilize
> landing strips, docking facilities, and other accouter-
> ments of an organized smuggling operation, all in
> order to catch criminals, then their use of a subpoena
> in the name of an undercover agent to enable him to
> retain his credibility with suspected criminals seems
> innocuous by comparison.

*Id.* at 760 (internal citations omitted).

Additionally, the concern that a suspect might be tricked by counsel's artful examination is inapplicable here, since Carona was not subject to any interrogation, let alone one by the prosecutor. Rather he was engaging in a conversation with an individual he believed to be his ally against the prosecution. *See Kenny*, 645 F.2d at 1339 (indirect communication with represented suspect "does not implicate the sorts of ethical problems addressed by the Code").

**[5]** It would be antithetical to the administration of justice to allow a wrongdoer to immunize himself against such undercover operations simply by letting it be known that he has retained counsel. Particularly here, where the undercover investigation revealed Carona encouraging Haidl to lie, to hold otherwise would be contrary to our observation in *Talao* that "it would be a perversion of the rule against *ex parte* contacts to extend it to protect [individuals] who would suborn perjury by [others]." *Talao*, 222 F.3d at 1140.

**[6]** There were no direct communications here between the prosecutors and Carona. The indirect communications did not resemble an interrogation. Nor did the use of fake subpoena attachments make the informant the alter ego of the prosecutor. On the facts presented in this case, we conclude that there was no violation of Rule 2-100.

**[7]** Even if the prosecutor's conduct had constituted an ethical violation, we conclude that the district court did not abuse its discretion in declining to suppress the tapes of the August 13 meeting. The district court's authority to exclude evidence obtained through a violation of Rule 2-100 is based on its supervisory powers. *Powe*, 9 F.3d at 69. "There are three legitimate grounds for a court's exercise of supervisory power: to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal

conduct." *Lopez*, 4 F.3d at 1463 (internal quotation marks omitted). None support suppression of the evidence here.

The first ground does not apply here because Rule 2-100 does not create a "recognized statutory or constitutional right." *See Talao*, 222 F.3d at 1138 (providing that Rule 2-100 "is a rule governing attorney conduct and the duties of attorneys, and does not create a right in a party not to be contacted by opposing counsel"); *see also* 28 C.F.R. § 77.5 (instructing that the procedures adopted to implement the McDade Amendment "do not . . . create a right or benefit, substantive or procedural").

In considering the second ground, "to preserve judicial integrity," the court must also consider the "considerable harm that would flow from indiscriminate application of an exclusionary rule." *United States v. Paynor*, 447 U.S. 727, 734 (1980). Courts have limited the exclusionary rule to "areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra*, 414 U.S. 338, 348 (1974). As the district court noted, no court has ever suppressed evidence in a criminal case based on a violation of Rule 2-100 or a similar rule by a government attorney unless there was also a violation of the Sixth Amendment. No such violation was alleged here.

**[8]** Finally, the district court's conclusion that state bar discipline could adequately deter future violations is supported by our case law. *See Lopez*, 4 F.3d at 1464 (declining to dismiss an indictment where less extreme remedies were available, "such as holding the prosecutor in contempt or referral to the state bar for disciplinary proceedings"); *see generally Talao*, 222 F.3d at 1138 (a court's finding that an attorney violated an ethical rule may "stigmatize" an attorney and "could have a serious detrimental effect on her career"). The fact that the state bar did not thereafter take action against the prosecutor here does not prove the inadequacy of the remedy. It may, to the contrary, suggest support for our conclusion that

there was no ethical violation to begin with. The district court did not abuse its discretion in declining to suppress the tapes of the August 13 conversation.

[9] Carona also contends that the district court erred in denying his request for an instruction informing the jury that it could consider the prosecutors' misconduct in assessing the weight given to Carona's taped statements. Carona was permitted to introduce evidence regarding the methods that were used to obtain these statements, however, and the jury could evaluate how these methods affected the reliability of the statements. That appears sufficient to us. Indeed, except insofar as the reliability of the statements was called into question, it was not the jury's role to judge the conduct of the prosecutor. Suggesting that the jury should do so could confuse and distract the jury from its assigned responsibility to determine whether Carona violated the law.

Carona argues that the district court opinion in *United States v. Talao*, No. CR-97-0217-VRW, 1999 WL 33599863 (N.D. Cal. June 17, 1999), supports his request to instruct the jury to consider the prosecutors' misconduct. That court's determination that there had been an ethical violation in *Talao* was overturned on appeal to this court, however, and consequently we had no occasion to review the district court's instruction. *Talao*, 222 F.3d at 1135. The decision of the district court in this case that such an instruction was unnecessary and that other remedies were sufficient was not an abuse of discretion.

[10] Similarly, the district court did not abuse its discretion by instructing the jury that the government "is not precluded from engaging in stealth and deception, such as the use of informants, in order to apprehend persons who have engaged in criminal activities." This instruction is an accurate description of the law, *see, e.g.*, 9th Cir. Crim. Jury Instr. 4.13 (2003), and it did not mislead the jury, *see, e.g.*, *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000).

Carona also contends that the district court should have permitted him to introduce evidence of the lead prosecutor's alleged misconduct for the jury to consider. The district court precluded this evidence pursuant to Rule 403 of the Federal Rules of Evidence, finding that the danger of unfair prejudice and confusion outweighed its probative value. Carona cites to *United States v. Sager*, 227 F.3d 1138 (9th Cir. 2000), but that case was different. The defendant in *Sager* sought to introduce details of an investigation in order to impeach the credibility of the investigating officer on cross-examination. *Id.* at 1143. We held that the jury should have been allowed to "grade" the investigation because the "[d]etails of the investigatory process potentially affected [the inspecting officer's] credibility, and perhaps more importantly, the weight to be given to evidence produced by his investigation." *Id.* at 1145.

[11] In contrast, the court's legal finding in this case that the prosecutors violated Rule 2-100 did not have any bearing on the credibility of any witness at trial. Carona was allowed to introduce evidence and examine witnesses regarding the manner in which his recorded statements were obtained by the government, as well as to the content of the subpoena attachments. Precluding evidence of the prosecutor's involvement in the subpoena scheme did not prevent the jury from assessing the quality of the government's investigation. Based on the potential for unfair prejudice, the district court did not abuse its discretion precluding this evidence. *See* Fed. R. Evid. 403.[2]

B.   *18 U.S.C. § 1512(b)(2)(A)*

Carona was charged with witness tampering in two separate

---

[2]Carona also contends that the district court should have disqualified the lead prosecutor, but he does not provide any legal justification for this argument. The district court properly held that disqualification was not necessary under the advocate-witness rule, the unsworn-witness rule, or for reasons of protecting the integrity of the judicial process.

counts. One count cited an alleged course of conduct by Carona over a period of more than three years, from March 2004 until August 2007, as being in violation of 18 U.S.C. § 1512(b)(1). Section 1512(b)(1) proscribes "corruptly persuad[ing]" another person with intent to "influence, delay, or prevent the testimony of any person in an official proceeding." Carona was acquitted by the jury on that count.

The other count charged Carona with violating 18 U.S.C. § 1512(b)(2)(A) by his actions on August 13, 2007, the day of the taped conversation between Carona and Haidl discussed at length above. Section 1512(b)(2)(A) proscribes "corruptly persuad[ing]" another person with the intent to "withhold testimony . . . from an official proceeding." The jury found Carona guilty on this count charging a violation of § 1512(b)(2)(A).[3]

[12] Carona argues that the district court erred in denying his motions for acquittal and arrest of judgment following his conviction because his conduct could not have violated § 1512(b)(2)(A). The count on which he was convicted alleged that Carona attempted "to corruptly persuade Haidl to withhold testimony through, among other ways, the use of false and misleading statements, with intent to cause and induce Haidl to withhold testimony in an official proceeding, before members of a Federal Grand Jury." Carona contends that this conduct fell exclusively under § 1512(b)(1), the section of the statute under which he was acquitted, because a rational juror could only find that he intended to "influence" a witness as proscribed in § 1512(b)(1). He argues that the phrase "withhold testimony" in § 1512(b)(2)(A) covers only

---

[3]Carona's acquittal on the charge under § 1512(b)(1) has no bearing on our review of his conviction under § 1512(b)(2)(A), even if there is overlap between the two statutes. "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Dunn v. United States*, 284 U.S. 390, 393 (1932); *see also United States v. Hart*, 963 F.2d 1278, 1281 (9th Cir. 1992).

an attempt to persuade a witness to withhold *all* testimony, and not an attempt to withhold certain information while giving false testimony.

"[I]n the absence of a statutory definition, a term should be accorded its ordinary meaning." *United States v. Banks*, 556 F.3d 967, 978 (9th Cir. 2009) (alteration in original) (internal quotation marks omitted). A term's "ordinary meaning" may be determined with reference to its dictionary definition at the time the statute was enacted. *Id.* The definition of "withhold" includes "[t]o omit to disclose upon request; as, to withhold information." *Black's Law Dictionary* 1437 (5th ed. 1979) (most recent edition when statute was enacted in 1982). The term "influence" means "[t]o affect, modify or act upon by physical, mental or moral power, especially in some gentle, subtle, and gradual way." *Id.* at 700.

**[13]** In the tapes from the August 13 meeting, Carona was recorded trying to persuade Haidl to testify before the grand jury that he did not give Carona any bribes. He encouraged Haidl to "say this to you, you know . . . you never gave me cash," and stated that "the answer is flat-ass didn't [expletive deleted] happen." After discussing a payment from Haidl to Carona, he also stated, "unless there was a pinhole in your ceiling that evening, it never [expletive deleted] happened." Carona and Haidl strategized about who would be "the first on the stand" and how to "get [their] stories straight," and, after persuasion from Carona, Haidl said that he was willing to "l[ie] my ass off and . . . . raise my [expletive deleted] hand, [and] I'll say it never happened."

**[14]** Carona's state of mind appeared to have involved both the intent to "influence" Haidl's testimony and the intent for Haidl to "withhold" testimony, based on the dictionary definitions of these words. Carona intended to "modify" or "affect" Haidl's testimony by encouraging Haidl to testify that no bribes occurred, as well as to "omit" testimony regarding the bribes. Accordingly, we agree with the district court's

conclusion that Carona violated § 1512(b)(2)(A) by attempting to persuade Haidl to withhold testimony about particular topics in the course of giving false testimony.

Carona argues that the phrase "withhold testimony" in § 1512(b)(2)(A) should be given a narrower interpretation. He contends that "withhold testimony" may only mean to leave the jurisdiction, go into contempt, assert the Fifth Amendment, or otherwise refuse to testify. He cites several cases that, he argues, are consistent with this interpretation of § 1512(b)(2)(A). These cases involved prosecutions under this section where the evidence showed that the defendants wanted to completely forestall the testimony of a witness.[4] These cases do not interpret the phrase "withhold testimony," however, nor do they address whether § 1512(b)(2)(A) refers exclusively to withholding all testimony or whether § 1512(b)(2)(A) covers a broader range of withholding including withholding on certain subjects while giving testimony.

Indeed, some of these cases indicate that § 1512(b)(2)(A) may cover withholding testimony on a particular topic. *See, e.g., United States v. Freeman*, 208 F.3d 332, 335 (1st Cir.

---

[4]*See United States v. Salazar*, 542 F.3d 139, 143-44 (5th Cir. 2008) (defendant threatened to rape and murder the witness's wife, causing the witness to "consider[ ] not testifying against [defendant]"); *United States v. Freeman*, 208 F.3d 332, 335 (1st Cir. 2000) (defendant told one witness to "keep his 'mouth shut' " and told another to "keep the lip zipped"); *United States v. Canan*, 48 F.3d 954, 957 (6th Cir. 1995) (defendant "threatened to kill" a witness "after learning that he intended to cooperate with authorities"); *United States v. Elwell*, 984 F.2d 1289, 1294 (1st Cir. 1993) (defendant made threatening phone calls, asserting that "nobody's going to no Grand Jury"); *United States v. Johnson*, 968 F.2d 208, 210 (2d Cir. 1992) (defendant threatened a witness by stating that "[if] I get indicted and you testify, I'm going to take care of you, I'm going to get you . . . . [b]ut if you don't, everything will be fine, everything will be okay") (first alteration in original); *United States v. Fagan*, 821 F.2d 1002, 1014 (5th Cir. 1987) (defendant "had made known . . . his willingness to pay $20,000 to anyone who would cause [the witness] not to testify").

2000) (during the grand jury investigation defendant told witnesses "not to say anything about [a nightclub where there was illegal activity]"); *United States v. Boyd*, 309 F. Supp. 2d 908, 916 (S.D. Tex. 2004) (defendant instructed the witness to "remain quiet concerning the activities of the [union under investigation]"). Other cases indicate that § 1512(b)(2)(A) also covers the intent to persuade a witness to testify with false information in the course of withholding information about a particular topic. *See United States v. Vampire Nation*, 451 F.3d 189, 194 (3d Cir. 2006) (defendant encouraged witness to give a false explanation for a transaction); *United States v. Johnson*, 968 F.2d 208, 209 (2d Cir. 1992) (defendant urged witness to "change his story and tell them that he didn't know what he was talking about") (alterations omitted).

Carona also argues that to "withhold testimony" under § 1512(b)(2)(A) must mean to omit all testimony in order to avoid rendering superfluous the "influence" prong of § 1512(b)(1). Carona contends that persuading a witness to falsely testify, conduct considered "influenc[ing]" testimony under § 1512(b)(1), will always involve some aspect of withholding truthful testimony under the district court's interpretation of § 1512(b)(2)(A) covering partially withheld testimony.

Carona cites the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted). This principle does not prevent more than one provision of a statute from applying in a particular instance, however. "When [two laws] only partially overlap, we must construe them in harmony." *In re Moses*, 167 F.3d 470, 476 (9th Cir. 1999); *see also Murillo v. Fleetwood Enters., Inc.*, 953 P.2d 858, 861 (Cal. 1998) ("[E]ven were we to agree some redundancy exists between two statutes, such redundancy would be insufficient" to void the statutes.).

[15] It should not be surprising that statutes are not necessarily written so that one and only one statute can apply at a time. To the contrary, statutes often contain overlapping provisions. The term "belt and suspenders" is sometimes used to describe the common tendency of lawyers to use redundant terms to make sure that every possibility is covered. "That some wear a belt and suspenders does not prove the inadequacy of either to hold up the pants, but only the cautious nature of the person wearing the pants." *Ortega-Gamboa v. Holder*, 2010 WL 2812758 at *1 (9th Cir. 2010) (unpublished). Congress may have acted similarly in drafting these statutes out of an understandable desire to make sure that no form of witness tampering be left out.

[16] Sections 1512(b)(1) and 1512(b)(2)(A)[5] do not completely overlap, in any event, so neither one is superfluous, even if both might apply to Carona's conduct. There are situations under which a defendant will violate one but not the other. For example, a defendant who intends for a person with no relevant information to provide a grand jury with a fabricated alibi supporting the defendant would transgress § 1512(b)(1) by corruptly influencing that person's testimony, but would not appear to violate § 1512(b)(2)(A) because the defendant did not intend for that witness to "withhold testimony." Conversely, a defendant who persuades someone else to conceal and fail to produce a document that had been subpoenaed would appear to violate § 1512(b)(2)(A), which explic-

---

[5]18 U.S.C. § 1512(b)(1) & (b)(2)(A) provide:

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

itly covers withholding a document, but not § 1512(b)(1), which appears to cover only prevention of the testimony of a person.[6] Because neither of the statutes, as interpreted and applied by the government and the district court, is entirely subsumed within the other, the two statutes so interpreted coexist in harmony. Defendant's attempt to exclude from § 1512(b)(2)(A) activity that might also be covered by § 1512(b)(1) is unavailing.

Carona also contends that the rule of lenity requires that § 1512(b)(2)(A) be interpreted in his favor. *See United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.") (internal quotation marks omitted). The rule of lenity only applies, however, where "there is a grievous ambiguity or uncertainty in the language and structure of the [statute], such that even after a court has seize[d] every thing from which aid can be derived, it is still left with an ambiguous statute." *United States v. Devorkin*, 159 F.3d 465, 469 (9th Cir. 1998) (second alteration in original) (internal quotation marks omitted). The phrase "withhold testimony" in § 1512(b)(2)(A) does not contain a "grievous ambiguity or uncertainty" that would make it unreasonable to apply it to a defendant who intends for a witness to partially omit testimony. *Nader*, 542 F.3d at 721 (the rule of lenity requires that "no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited"). Indeed, we have stated that "[b]ecause the meaning of language is inherently contextual, we have declined to deem a statute ambiguous for purposes of lenity merely because it was *possible* to articulate a construction more narrow than that urged by the government." *United States v. Alfeche*, 942

---

[6]As noted above, the two counts of the indictment charging violations of these statutes also covered different time periods. The count alleging violation of § 1512(b)(1) covered Carona's conduct over a three-year period, while the count on which Carona was convicted, charging a violation of § 1512(b)(2)(A), focused on his activity on a single day.

F.2d 697, 699 (9th Cir. 1991) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). There is no serious contention that Carona did not understand that his conduct on August 13, 2007, was unlawful.

Based on his interpretation of "withhold[ing] testimony" under § 1512(b)(2)(A), Carona similarly contends that the count of the indictment under which he was convicted failed to charge conduct that actually violated § 1512(b)(2)(A). That count charged Carona with attempting to persuade Haidl "to withhold testimony through, among other ways, the use of false and misleading statements." Carona argues that the district court erred in denying his motion to arrest judgment pursuant to Rule 34(a)(1) of the Federal Rules of Criminal Procedure, which instructs that the court "must arrest judgment if . . . the indictment . . . does not charge an offense." Because we hold that § 1512(b)(2)(A) covers withholding testimony on certain subjects during the course of giving false testimony, this argument fails.

Carona additionally argues that the jury instruction for the count of conviction misstated the elements of § 1512(b)(2)(A). He did not challenge this instruction before the district court and consequently our review is for plain error. *See Miranda-Lopez*, 532 F.3d at 1040. There was no error of any kind in the instruction, however, so there was no plain error. This argument rests on Carona's narrow interpretation of § 1512(b)(2)(A), and we have rejected that interpretation.

## III.  Conclusion

It does not appear to us that there was a violation of Rule 2-100 by the prosecutors in this case, but even if there had been, the district court's decision to deny Carona's motion to suppress and other requested relief was not an abuse of discretion. Carona's conduct violated 18 U.S.C. § 1512(b)(2)(A),

438          UNITED STATES v. CARONA

and consequently the district court properly denied Carona's
motions to arrest judgment and for a judgment of acquittal.

**AFFIRMED.**